### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

**LENNY CAIN,**                                      :

                          **Petitioner**            :          **CIVIL ACTION NO. 3:17-0105**

                                                     :          **(JUDGE MANNION)**

                    **v.**                           :

**WARDEN SPAULDING,**                                :

                      **Respondent**                 :

### <u>MEMORANDUM</u>

## I. <u>Procedural Background</u>

Lenny Cain, an inmate confined in the Allenwood Medium Federal Correctional Institution, White Deer, Pennsylvania, filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges the Disciplinary Hearing Officer's (DHO) imposition of sanctions for two incident reports arising out of the same incident. Id. Specifically, Petitioner alleges that his due process rights were violated during the course of two separate prison disciplinary hearings. Id. Specifically, he raises four issues in his petition for writ of habeas corpus:

> 1. Bureau of Prisons' Administrative Remedy, 28 CFR §542, is inadequate and ineffective to challenge the legality of a sanction imposed by the DHO without having first served the maximum punishment imposed, due to a loop hole that allows no time limit in writing, dismissing and again re-writing the charge until the punishment imposed is fully served or the inmate gives up appealing the charge.

2. DHO Bittenbender violated inmate Cain's due process rights in regard to <u>Wolff v. McDonnell</u> when he conducted a new DHO hearing after remand and vacation of the charge and sanction by the Regional Director by holding the hearing pro-forma exparte.

3. DO Bittenbender sanctioned inmate Cain as a repeat offender for conduct that was part of the same incident as though he was a second offender requiring increased sanctions in violation of Cain's right to fundamental fairness/due process.

4. DHO Bittenbender violated inmate Cain's rights to equal protections by being treated more harsh than others that are similarly situated when imposing sanctions.

<u>Id</u>. For relief, Petitioner requests the incident reports be expunged and his good conduct time be restored. <u>Id</u>.

By Memorandum and Order dated March 5, 2018, the late Honorable William J. Nealon, dismissed the petition for writ of habeas corpus for Petitioner's failure to exhaust administrative remedies. (Doc. 12). On April 17, 2018, Plaintiff filed a timely notice of appeal. (Doc. 18).

On May 24, 2019, the United States Court of Appeals for the Third Circuit remanded the above captioned action for reconsideration of Petitioner's exhaustion of administrative remedies. (Doc. 26). Supplemental briefing was then ordered. (Doc. 27).

By Order dated September 11, 2020, the case having been reassigned to the undersigned, was reopened, the Court's March 5, 2018 Memorandum and Order was vacated, Petitioner was found to have exhausted his

administrative remedies and Respondent was directed to address the merits of the petition. (Doc. 31). The petition is now ripe for disposition and, for the reasons that follow, will be **DENIED**.

## II. <u>Factual Background</u>

On July 26, 2015, while confined in FCI-Allenwood, Petitioner was served with Incident Report No. 2742429, charging him with Fighting, a Code 201 violation. (Doc. 7-1 at 18, Incident Report). The incident report, which was written by Lieutenant B. Sudul, reads as follows:

> On July 26, 2015, at approximately 7:45 pm, the 3B Unit officer called for assistance due to three inmates fighting in the upper tier. Upon review of the institutional camera system, utilizing camera 219 at 7:48 pm, Inmate Graham, Jeremy #16188-171 was standing on the upper tier when he was approached by Inmates Ormond, Cody #20118-078 and Cain, Lenny #42649-037. A brief discussion occurs and Inmate Ormond pushes Inmate Graham. As the fight progresses, Inmate Graham brandishes a swinging style weapon and continues to fight Inmate Ormond and Cain. Once the inmates were alerted to staff presence, they retreated to their assigned cells. Once the inmates were identified, they were escorted to the Lieutenant's Office, photographed, medically assessed and placed in the Special Housing Unit. Additionally, a cell search was completed of cell 219. The unit officer located a combination lock inside a sock on his assigned bed. This item of contraband was the object Inmate Graham utilized during the altercation.

<u>Id</u>. On July 29, 2015, Petitioner appeared before the Unit Discipline Committee ("UDC"). <u>Id</u>. Due to the severity of the charges, the UDC referred

- 3 -

the charge to the Discipline Hearing Officer ("DHO"). Id. Petitioner was then advised of his rights before the DHO and provided with a Notice of Discipline Hearing before the DHO, which provided him an opportunity to request witnesses and a staff representative, both of which he waived. Id.

On August 12, 2015, Petitioner appeared for a hearing before DHO, D. Krebs. (Doc. 2-1 at 5, DHO Report). At the onset of the hearing, Cain was advised of his rights by the DHO, indicated he understood them and chose to make the following statement:

> Never really got physical. He stole my headphones. We approached him about it, he got all crazy and went at my cellie. He stole my headphones, we had to do something.

Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: July 26, 2015 Memoranda from B. Sudul and A. Watson; Evidence Photographs; and BOP Health Services Clinical Encounters for Graham, Cain and Ormand. Id.

The specific evidence relied on to support the DHO's findings was as follows:

> CAIN's involvement in the incident, as noted in Section 11 of Incident Report 2742429, as provided by B. Sudul, Lt., was reviewed. Paraphrased, B. Sudul writes: On July 26, 2015, at approximately 7:45 pm, the 3B Unit officer called for assistance due to three inmates fighting in the upper tier. Upon review of the

institutional camera system, utilizing camera 219 at 7:48 pm, Inmate Graham, Jeremy #16188-171 was standing on the upper tier when he was approached by Inmates Ormond, Cody #20118-078 and Cain, Lenny #42649-037. A brief discussion occurs and Inmate Ormond pushes Inmate Graham. As the fight progresses, Inmate Graham brandishes a swinging style weapon and continues to fight Inmate Ormond and Cain. Once the inmates were alerted to staff presence, they retreated to their assigned cells. Once the inmates were identified, they were escorted to the Lieutenant's Office, photographed, medically assessed and placed in the Special Housing Unit. Additionally, a cell search was completed of cell 219. The unit officer located a combination lock inside a sock on his assigned bed. This item of contraband was the object Inmate Graham utilized during the altercation.

The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report as well as the content of the inmate's statement directed toward the staff member.

Upon questioning by the DHO, Inmate CAIN, Lenny, Registration 42649-037 denied the charge. He elaborated upon his plea by stating, "Never really got physical. He stole my headphones. We approached him about it, he got all crazy and went at my cellie. He stole my headphones, we had to do something."

After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence/some facts, listed in the paragraphs above, support(s) the finding, inmate CAIN, Lenny, Register No. 42649-037, committed the prohibited act(s) of Fighting with another person, Code(s) 201 on 7/26/15, at or about 7:48 pm, in Upper Tier Unit 3B, at FCI Allenwood, PA.

Id. The DHO sanctioned Cain on the Code 201 violation to twenty-seven (27) days loss of Good Conduct Time; thirty (30) days disciplinary segregation; and three (3) months of loss of phone privileges, thru 11-11-2015. Id. The DHO documented his reasons for the sanctions given as follows:

> CAIN's involvement in a fight with another inmate potentially threatened not only the safety of the participants, but staff responding to the incident and other inmates in the area. Sometimes what appear to be isolated incidents (a fight in this case) evolve to involve others. With this, **Disallowance of Good Conduct Time and Disciplinary Segregation** is sanctioned in an effort to punish CAIN for his behavior, while **Loss of Privileges (Phone)** is used to hopefully deter him from this behavior in the future.

Id. Cain was advised of his appeal rights at the conclusion of the hearing. Id.

On September 15, 2015, at the conclusion of an SIS investigation[1] involving the fight from Incident Report No. 2742429, Cain received Incident Report No. 2761143 from SIS Lt. Hughes, for Possession of a Weapon, a Code 104 violation. (Doc. 2-1 at 8, Incident Report). The incident report stated the following:

> On 9-15-15, at 11:30 a.m., SIS Case File ALM-15-0097, concluded that inmate Cain, Lenny, Reg. No. 42649-037, utilized a swinging weapon on July 26, 2015, during a fight with inmate

---

[1] Upon conclusion of the internal investigation, on September 17, 2015, the incident was referred to the FBI for possible prosecution. (Doc. 34-1 at 29). On September 18, 2015, the FBI declined in lieu of BOP administrative sanctions. Id.

> Graham, Jeremy, Reg. No. 16188-171. Upon review of the
> Institutional Camera System, camera 219 identifies inmate Cain
> swinging a homemade weapon, lock in a sock, at inmate Graham
> on July 26, 2015, on the tope (sic) tier of Unit 3B, at 7:48:35 p.m.,
> in an attempt to strike inmate Graham.

Id. On September 23, 2015, Petitioner appeared before the UDC. Id. The

UDC determined that "based on the camera footage, the UDC is forwarding

the incident report to the DHO for disposition." (Doc. 2-1 at 9). Petitioner was

then advised of his rights before the DHO and provided with a Notice of

Discipline Hearing Before the DHO, which provided him an opportunity to

request witnesses and a staff representative. (Doc. 2-1 at 2). Although

Petitioner did not request witnesses, he did request a staff representative,

who appeared on his behalf. Id.

On September 30, 2015, Petitioner appeared before DHO K.

Bittenbender for a discipline hearing. (Doc. 2-1 at 2, DHO Report). At the

outset of the hearing, Petitioner was advised of his rights before the DHO,

indicated he understood them and chose to provide the following statement:

"I'm guilty." Id. The DHO then noted the following:

> No procedural issues were cited and no documentary evidence
> was presented for consideration. The DHO noted a delay in the
> discipline process. This was due to the report being referred to
> the FBI/AUSA for criminal prosecution. The agency referred the
> report back for disciplinary processing. The DHO did not believe
> this delay infringed upon the inmate's ability to defend himself
> against the charged behavior, nor was it addressed as an issue.

- 7 -

Staff Representative, Ms. Mentz was disclosed all documents in reference to this case.

Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: Inmate Investigative Report by S. Prutzman, dated July 30, 2015; CCTV surveillance (Unit 3B-219-219) taken on July 26, 2015. Id.

The specific evidence relied on to support the DHO's findings was as follows:

During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings. CAIN's involvement in the incident, as noted in Section 11 of the Incident Report 2761143, as provided by M. Hughes, SIS Lt., was reviewed. Paraphrased, M. Hughes writes: On 7/26/15, at or about 11:30 am, SIS Case File ALM-15-0097, concluded that inmate CAIN, Lenny #42649-037, utilized a swinging weapon on July 26, 2015, during a fight with inmate Graham, Jeremy #16188-171. Upon review of the Institutional Camera System, camera 219 identifies inmate CAIN swinging a homemade weapon, lock in a sock at inmate Graham on July 26, 2015, on top tier of Unit 3B at 7:48:35 pm in an attempt to strike inmate Graham.

Inculpatory evidence in the form of CCTV surveillance footage dated 7/26/15 corroborated the evidence cited in this report. The video footage clearly depicts the inmate using a homemade weapon to inflict bodily injury on the victim.

The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be

- 8 -

supported in this case based upon the greater weight of evidence
cited in this report as well as the inmate's admission.

Upon questioning by the DHO, Inmate CAIN, #42649-037
admitted the charge. He elaborated upon his plea by stating, he
was guilty. After the consideration of evidence documented
above, the DHO has drawn the conclusion the greater weight of
the evidence/some facts, listed in the paragraphs about,
support(s) the finding, inmate CAIN, #42649-037 committed the
prohibited act(s) of Possession of a weapon, Code(s) 104 on
7/26/15, at or about 7:48 pm, in Unit 3B Top Tier, at FCI
Allenwood, PA.

Id. The DHO sanctioned Cain on the Code 104 violation to forty-one
(41) days loss of Good Conduct Time; sixty (60) days disciplinary
segregation; forfeiture of 100 days non-vested good conduct time, and 18
months loss of phone and visiting privileges. Id. The DHO documented his
reasons for the sanctions given as follows:

CAIN's possession of a weapon threatened the safety of both
staff and inmates. Weapons in a correctional setting are solely
possessed for the future infliction of serious bodily harm. This
threatens not only the intended victim of weapon assaults, but
others in the area and staff responding to incidents. Accordingly,
the Disallowance of Good conduct Time and the Forfeiture of
Non Vested Good Conduct Time is sanctioned to punish CAIN
for his behavior, while the Loss of Privileges (Visit and Phone)
and Disciplinary Segregation (Suspend 180 days pending clear
conduct) is sanctioned in an effort to deter him from this type of
behavior in the future. The DHO finds the charge for code 104 to
warrant the Forfeiture of Non Vested Good Conduct Time in
addition to the Disallowance of Good Conduct Time based on the
offense being of a highly aggravated offense which greatly
jeopardizes the safety of the staff and inmates.

- 9 -

Id. Cain was advised of his appeal rights at the conclusion of the hearing. Id.

On October 9, 2015, Petitioner filed an appeal to the Regional Director, who, on November 6, 2015, remanded the disciplinary action based on the following:

> You appeal the September 30, 2015, decision of the Discipline Hearing Officer (DHO) at FCI-Allenwood finding you committed the prohibited act of Possession of a Weapon, Code 104, Incident Report 2761143. You challenge the timing of this disciplinary action and contend you received a separate Incident Report for Fighting when Lieutenant reviewed the video on July 16, 2015. You also contend that sanctions are not consistent with other inmates involved in the fight. A review of your appeal reveals questions concerning the disciplinary process. Accordingly, this disciplinary action is being remanded for further review and rehearing, if necessary. You will be notified of the date and time of further proceedings. After further proceedings, you may appeal again to this office, if you desire. Your appeal is partially granted.

(Doc. 2-1 at 27, Response).

On February 24, 2016, Petitioner appeared before K. Bittenbender for a re-hearing on Incident Report No. 2761143. (Doc. 2-1 at 12, DHO Report). Petitioner was provided an opportunity for staff representation and to call witnesses. (Doc. 34-1 at 19). Staff member S. Mentz was appointed as Petitioner's staff representative. Id. At the outset of the hearing, Inmate Cain stated, "I have no statement." Id. DHO Bittenbender relied on the

- 10 -

documentary and specific evidence from Petitioner's September 30, 2015

hearing as well as finding the following:

> Still footages of the CCTV are slightly blurry, however, the CCTB (High Definition Video) clearly depicts CAIN swinging a weighted object at Inmate GRAHAM as described in the report.

> Inculpatory evidence in the form of the Investigative Report dated 7/30/15 from Lt. Prutzman corroborated the evidence cited in this report. The report indicates Inmate ORMOND and CAIN approached Inmate GRAHAM on the top tier of Unit 3B. After a brief conversation between ORMOND and GRAHAM, a fight begins. GRAHAM brandishes a swinging weapon and continues to fight with CAIN and ORMOND. CAIN also brandishes a swinging weapon and continues to attempt to strike GRAHAM with the weapon. CAIN and ORMOND had eluded to the fact that GRAHAM was in possession of property belonging to CAIN and believed him to be a thief.

> A rehearing was conducted to clear the record as to allow CAIN the ability to appeal any previous decisions imposed by the DHO. The sanctions imposed on 9/30/15 are sustained.

(Doc. 2-1 at 14, Rehearing DHO Report).

On March 4, 2016, Petitioner again appealed to the Regional Director,

who, on March 30, 2016, again remanded, based on the following:

> You appeal the February 24, 2016, rehearing decision of the Discipline Hearing Officer (DHO) at FCI-Allenwood finding you committed the prohibited act of Possession of a Weapon, Code 104, Incident Report No. 2761143. You deny committing the prohibited act. You contend that you were not notified of the rehearing and did not have adequate time to prepare a defense. You contend you did not have an opportunity to present a statement or call witnesses at the rehearing. You question the delay between the date the incident occurred, and the date the

reporting staff member became aware of the incident and wrote the Incident Report. A review of your appeal reveals questions concerning the disciplinary process. Accordingly, this disciplinary action is being remanded for further review and rehearing, if necessary. You will be notified of the date and time of further proceedings. After further proceedings, you may appeal again to this officer, if you desire. Your appeal is partially granted.

(Doc. 2-1 at 19, Response). In remanding for rehearing, the Regional

Director addressed the following concerns:

Upon review, several concerns were noted. There is no documentation in the record indicating that the inmate was afforded the opportunity to call witnesses at the rehearing. The DHO Report appears to rely on inmate Cain's waiver of witnesses which occurred prior to the initial DHO Hearing, as documented on the Inmate Rights at Discipline Hearing form dated September 23, 2015. As a rehearing was conducted, the inmate must be given a fresh opportunity to call witnesses, regardless of what occurred in connection with the prior DHO Hearing.

The DHO does not address the concerns noted in the Region's initial remand, Remedy No. 849544-R1, questioning why the inmate was only charged with fighting, but was not charged with possession of a weapon after a Lieutenant reviewed the video on the date of the incident. The Incident Report in which inmate Cain was charged with Code 201, Fighting, Incident Report No. 2742429, was written and delivered to inmate Cain on July 26, 2015. In contrast, the Incident Report in this case derives from the same incident but was written and delivered to inmate Cain more than one month later, on September 15, 2015. Although the DHO Report documents the Incident Report was suspended pending FBI/AUSA referral on September 15, 2015, it does not adequately explain the reason for the delay in the writing and delivery of Incident Report No. 2761143, for the time period between July 26, 2015, through September 15, 2015.

- 12 -

If this incident is to be supported, the Incident Report must be rewritten for the writer to adequately explain how they became aware of the incident. It is recommended that the investigator of the SIS case be the writer of the Incident Report, and accurately describe how and when they became aware of the incident, including when the video footage was reviewed. A new DHO Hearing must then be held, and inmate Cain must receive all the rights and opportunities at the rehearing that he would be given at a standard DHO Hearing, including the ability to prepare for the charge, to present a defense, and the opportunities to call witnesses and a staff representative.

Therefore, this disciplinary is being remanded for further review. The reprocessing of this disciplinary action should not exceed 30 days from the date of this memorandum. If you have any questions about this decision, please contact J. Hepner, Discipline Hearing Administrator, at (215) 521-7455. Thank you for your attention to this matter.

(Doc. 7-1 at 27, 28, Memorandum).

On April 12, 2016, SIS Lieutenant Prutzman rewrote Incident Report

No. 2761143 to reflect the following:

This incident is being re-written on 4/12/16 in regards for further clarification as well as in reference to the inmate's appeal to NERO. The initial incident report was written by SIS supporting staff and not the investigator. This report is being rewritten to accurately reflect the inmate's misconduct during this incident. On 9/15/15 at 11:30 am, SIS Case File ALM-15-0097 concluded Inmate CAIN #42649-037 utilized a weighted object inside a sock on July 26, 2015 during a fight with Inmate GRAHAM #16188-171. Upon closer examination of the mutual physical altercation between CAIN and GRAHAM; CAIN is depicted violently swinging a weighted object inside of a sock at Inmate GRAHAM. Specifically, Inmate ORMOND, #20118-078 and CAIN approached GRAHAM on the top tier of Unit 3B. After a brief conversation between ORMOND and GRAHAM, a fight ensues.

> GRAHAM brandishes a swinging weapon and fights with Inmates CAIN and ORMOND. CAIN brandishes a swinging weapon and continues to attempt to strike GRAHAM with the weapon. This is observed on CCTV Camera 219, Unit 3B-219. The video clearly depicts both inmates GRAHAM and CAIN brandishing swinging type weapons and hitting each other with them. CAIN was initially provided an incident report for only Fighting (Incident Report#2742429). It wasn't until during the course of the investigation that the video had revealed and depicted CAIN brandishing and using a homemade swinging-type weapon (weighted object inside of the sock).

(Doc. 7-1 at 56, Incident Report).

On April 20, 2016, the Warden approved the UDC's request for an extension to conduct a hearing for Incident Report #2761143, stating that the incident report was re-written on April 12, 2016 and received by the Unit Team for processing on April 14, 2016. (Doc. 34-1 at 11). The hearing date was changed from June 15, 2016 to June 29, 206. (Doc. 34-1 at 12). Petitioner was permitted to request a staff representative, who did appear on Petitioner's behalf and witnesses.[2] Id. Petitioner was then provided with a Notice of Discipline Hearing before the DHO and signed it, acknowledging his right to a staff representative and witnesses. (Doc. 34-1 at 22).

---

[2] Although Petitioner requested Inmate Ormond as his only witness, Inmate Ormond had been released and was unable to appear on Petitioner's behalf. Id.

- 14 -

On June 29, 2016, Petitioner appeared before DHO K. Bittenbender for the rehearing on the rewritten Incident Report. (Doc. 7-1 at 58-61, DHO Report). In addition to relying on the documentary evidence in the original DHO report, DHO Bittenbender also relied on a June 15, 2016 Memorandum, authored by Lt. Sudul. Id. DHO Bittenbender sustained the original sanctions, noting the following procedural issues:

> CAIN was appointed a Warden Appointed Staff representative. Mr. Bomboy was appointed. Mr. Bomboy reviewed all video evidence and supporting documentation.
>
> Mr. Bomboy stated he reviewed the video and clearly depicts CAIN brandishing a weapon (lock and sock).
>
> 29 Jun 16 DHO Hearing: Inmate CAIN declined to make any statement.
>
> Staff Representative, Mr. Bomboy was disclosed all documents in reference to this case.

In addition to the original specific evidence relied on to support the original findings, DHO Bittenbender found the following:

> Inculpatory evidence in the form of memorandum from Lt. Sudul dated 6/15/16 corroborated the evidence cited in this report. Lt. Sudul writes: On July 26, 2015 I responded to a fight in Unit 3B. Upon a quick review of the video footage in the unit, I observed GRAHAM brandishing a weapon and utilizing it in a fight with ORMOND and CAIN. I did not initially observe CAIN brandishing a weapon at the time of the incident, however, it was clearly revealed upon closer review of the CCTB footage after I had written CAIN for code 201, Fighting. Upon closer review of the CCTV footage, CAIN is observed swinging a weighted object

- 15 -

inside of the sock at GRAHAM during the fight. It was in the best interest of the disciplinary process to have SIS write the incident report for code 104 to substantiate CAIN's misconduct of possession of a weapon at the conclusion of the SIS investigation.

The sanctions imposed on 9/30/15 and the subsequent rehearing held on 24 Feb 16 are being sustained.

The DHO conducted a rehearing on 29 Jun 16 to address the reason why the incident report for code 104 had been written after a report for code 201 was written. The rehearing is to clear the record and to allow CAIN the ability to appeal any previous decisions imposed by the DHO. The video footage was reviewed by the DHO Staff Representative, the reporting officer and the initial responding/reporting lieutenant.

Id. The DHO informed Petitioner of his right to appeal the decision within twenty (20) days under the Administrative Remedy Process. Id.

On July 7, 2016, Cain filed Administrative Remedy No. 868330-R1 to the Regional Director's Office. (Doc. 2-1 at 22, Regional Appeal Response). By Response dated July 8, 2018, the Regional Director rejected the appeal, stating that "it is unclear if you are filing an appeal of the DHO Hearing of 6-29-16 or a staff complaint" and "staff complaints should be filed at the institution first." Id. The Regional Director's Office advised Cain to re-file if he is appealing the DHO's June 29, 2016, re-hearing of Incident Report No. 2761143, and to provide more specific information about his request/appeal,

so that it may be considered. Id. The Regional Director's Office provided Cain

with 10 days to re-file. Id.

On July 19, 2016 Petitioner re-filed Administrative Remedy No. 868330-R1 (re-designated as Administrative Remedy No. 868330-R2). (Doc. 7-1 at 94, Administrative Remedy Generalized Retrieval).

In a response dated August 16, 2016, the Regional Director denied Petitioner's appeal as follows:

> You appeal the June 29, 2016 decision of the Discipline Hearing Officer (DHO) at FCI-Allenwood, finding you committed the prohibited act of Possessing of a Dangerous Weapon, Code 104, Incident Report No. 2761143. You do not deny committing the prohibited act, but contend your due process rights were violated as the UDC review and DHO hearing were untimely. You request this appeal be granted like your previous appeals, and a new DHO be assigned to conduct the hearing.
>
> The DHO reasonably determined you committed the prohibited act based on the following. On April 12, 2016 incident report #2761143 was re-written for clarification of the incident which occurred on July 26, 2015. Specifically, on September 15, 2015 an SIS investigation concluded you repeatedly swung a weighted object at another inmate during a fight in an attempt to inflict injury. This was observed by investigative staff upon a review of video footage of the incident. The DHO also viewed the video footage and detailed in his report observing you engage in this prohibited act. The DHO also relied upon an investigative report, and your admission in a previous hearing in which you admitted to committing the prohibited act.
>
> Your contention your due process rights were violated is without merit. A review of the record reveals that the Warden approved

- 17 -

an extension for the UDC review. Further, there is no time frame specified in policy for the DHO hearing to be completed.

The record in this case reflects substantial compliance with Program Statement 5270.09, Inmate Discipline Program. The decision of the DHO was based upon the greater weight of the evidence, and the sanctions imposed were consistent with the severity level of the prohibited act. The sanctions imposed, disallowance of 41 days of good conduct time, 60 days of disciplinary segregation pending 180 days clear conduct, forfeiture of 100 days of non-vested good conduct time, and loss of 18 months of telephone and visitation privileges, were not disproportionate to your misconduct. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

(Doc. 7-1 at 31, Response).

## III. Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court

found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision

of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, *et seq*. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

- 20 -

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Cain was afforded all of the required procedural rights set forth in Wolff. In accordance with BOP

regulations, Cain received written notice of both disciplinary charges at least twenty-four hours prior to his hearings and rehearings; he appeared at the hearings and rehearings and made statements regarding the charges; he was given the right to a staff representative, an opportunity to present witnesses and provide documentary evidence (though he chose not to do so); and he was given written statements explaining the DHO's decisions in both proceedings. See Wolff, 418 U.S. at 564–66. Specifically, DHO Bittenbender reviewed the CCTV, the SIS investigation/incident report, Memoranda from B. Sudul and A. Watson; Evidence Photographs; and BOP Health Services Clinical Encounters for Graham, Cain and Ormand. Thus, the record clearly contains "some evidence" to support the DHO's conclusion that Cain was guilty of both fighting and possession of a weapon.

In addition to finding that there was some evidence to support the DHO's findings of guilt, the Court also finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 100-level, greatest severity level prohibited act and a 200-level, high severity level prohibited act. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 100-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%), and/or terminate or

disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 12 months)

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmate's personal property.

K. Confiscate contraband.

L. Restrict to quarters.

M. Extra duty.

Additionally, the following sanctions are available for 200-level offenses:

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 6 months)

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

The DHO sanctioned Cain on the Code 104 violation to forty-one (41) days loss of Good Conduct Time; sixty (60) days disciplinary segregation; forfeiture of 100 days non-vested good conduct time, and 18 months loss of phone and visiting privileges. On the Code 201, the DHO sanctioned Cain to twenty-seven (27) days loss of Good Conduct Time; thirty (30) days disciplinary segregation; and three (3) months of loss of phone privileges, thru 11-11-2015.

Thus, contrary to Petitioner's claim that he is "being treated more harsh than others that are similarly situated when imposing sanctions", (Doc. 2), the sanctions imposed by the DHO in the present case were consistent with the severity levels of the prohibited acts and within the maximum available to the DHO. Accordingly, the petition will be denied.

## IV. <u>Conclusion</u>

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 26, 2021**
17-0105-02

- 25 -